UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AUGUSTINE BAND OF CAHUILLA INDIANS**, a federally-recognized Indian tribe,<br><br>**Plaintiff**<br><br>v.<br><br>**STATE OF CALIFORNIA, and GAVIN NEWSOM**, as Governor of the State of California,<br><br>**Defendants** | CASE NO. 1:21-CV-1509 AWI SKO<br><br>ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE<br><br>(DOC. NO. 13) |

Plaintiff Augustin Band of Cahuilla Indians (the "Tribe") has filed suit against the State of California and Gov. Gavin Newsom (collectively "California") alleging violations of the Indian Gaming Regulatory Act ("IGRA"). Specifically, the Tribe alleges that California failed to engage in good faith negotiations on a new Tribal-State Gaming Compact. Currently before the Court is California's 28 U.S.C. § 1404(a) motion to transfer venue from the Eastern District of California ("EDCA") to the Central District of California ("CDCA"). For the reasons that follow, the motion will be granted.

**DEFENDANT'S MOTION**

*Defendant's Argument*

California argues that the existing Tribal Gaming Compact between the Tribe and California contains a forum selection clause. Under this clause, venue for disputes involving good faith negotiations is set in the CDCA. Pursuant to the Supreme Court's decision in *Atlantic Marine*, the clause should be enforced and this matter transferred to the CDCA.

Alternatively, the relevant § 1404 factors favor a transfer. Because IGRA good faith cases are resolved by evaluating the record of negotiation between the Tribe and California, live

witnesses are not used.  This means that many of the typical transfer factors do not apply.  Further, the CDCA has more judges and a less congested docket, which means that the case will likely be resolved quicker in the CDCA.  Further, any common interests that this case may share with other IGRA good faith cases pending in the EDCA will be resolved before the Ninth Circuit in the *Chicken Ranch* litigation.  Thus, this case will be resolved based on its own record of negotiation and the Ninth Circuit's decision.  Finally, because the Tribe's casino is located in the CDCA, the case could have been brought in that district and there is no impediment to transfer.

*Plaintiff's Opposition*

The Tribe argues that venue is appropriate in the EDCA and should not be transferred to the CDCA.  The forum selection clause is permissive, which means that the analysis of *Atlantic Marine* does not apply.  In terms of the traditional § 1404(a) factors, the convenience of the parties and witnesses is not a significant factor because this case will be decided on the record of negotiations and likely cross-motions for summary judgment.  However, the "interests of justice" related factors weigh against a transfer.  Judge Ishii has already ruled on lawsuits against California by at least six other tribes and is currently presiding over eight other cases, most of which involve cross-motions for summary judgment.  No other judge is as familiar with IGRA tribal-state compact negotiations occurring in the last five years (like the negotiations in this case). Although the record of negotiation is not identical to other pending cases, this case and the other cases pending before Judge Ishii involve either substantially similar or identical legal issues, applicable law, and demands by California.  Those demands are largely also at issue before the Ninth Circuit in the *Chicken Ranch* case.  If this case is transferred to the CDCA, the parties will need to familiarize a new judge with a detailed factual background and a legal framework with witch the judge will be unfamiliar.  This would be a considerable burden to the CDCA.  Further, while most of the issues in this case are the same as *Chicken Ranch*, there are demands made by California that were not made in *Chicken Ranch*, which means that *Chicken Ranch* will not *per se* be dispositive of all issues in this case.  Additionally, this motion is an attempt at forum shopping because this Court has issued rulings in the *Chicken Ranch* case that would be against California and would be dispositive in this case.  Finally, this motion has resulted in an unnecessary delay.

*Forum Selection Clause*

The 2000 Tribal-Gaming Compact between the Tribe and California contains a forum selection clause. That clause reads:

> Disagreements that are not otherwise resolved by arbitration or other mutually agreeable means as provided in Section 9.3 may be resolved in the United States District Court where the Tribe's Gaming Facility is located, or is to be located, and the Ninth Circuit Court of Appeals (or, if those federal courts lack jurisdiction, in any state court of competent jurisdiction and its related courts of appeal). The disputes to be submitted to court action include, but are not limited to, claims of breach or violation of this Compact, or failure to negotiate in good faith as required by the terms of this Compact.

Doc. 13-3 at Ex. A, p. 27 ("2000 Tribal-Gaming Compact") at ¶ 9.1(d).[1]

*Legal Standard*

28 U.S.C. § 1404(a) provides in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). This statute partially displaces the common law doctrine of *forum non conveniens*. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. RICOH Corp., 487 U.S. 22, 29 (1988); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). The analysis of a § 1404(a) motion depends on whether a forum selection clause is at issue, see Atlantic Marine Constr. Co. v. United States Dist. Ct., 571 U.S. 49, 62-63 (2013); Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp., 28 F.4th 956, 963 (9th Cir. 2022), and whether the forum selection clause is mandatory or permissive. See Lakeside Surfaces, Inc. v. Cambria Co., 16 F.4th 209, 216 (6th Cir. 2021); D&S Consulting, Inc. v. Kingdom of Saudi Arabia, 961 F.3d 1209, 1213 (2020); BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 471-72 (4th Cir.

---

[1] There is no dispute that the Tribe's casino is located in Riverside County, which is in the CDCA.

1  2018); Weber v. PACT XPP Techs., AG, 811 F.3d 758, 766-67 (5th Cir. 2016); Found. Fitness
2  Prods., Ltd. Liab. Co. v. FreeMotion Fitness, 121 F. Supp. 3d 1038, 1043 (D. Or. 2015). "To be
3  mandatory, a clause must contain language that clearly designates a forum as the exclusive one."
4  Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1045 (9th Cir. 2015); Northern Cal. Dist. Council
5  of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). A permissive
6  clause often authorizes jurisdiction in a designated forum and does not prohibit litigation
7  elsewhere. See Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 103 (1st Cir. 2022); Slater v.
8  Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1330 (11th Cir. 2011); Hunt Wesson Foods, Inc. v.
9  Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987).

10      If a permissive forum selection clause is at issue, courts will examine the traditional public
11 and private factors in determining whether to transfer venue. See Lakeside Surfaces, 16 F.4th at
12 216; D&S Consulting, 961 F.3d at 1213; BAE Sys., 884 F.3d at 471-72; Weber, 811 F.3d at 766-
13 67. Those factors include: (1) the location where the relevant agreements were negotiated and
14 executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of
15 forum; (4) the respective parties' contacts with the forum; (5) the forum's contacts with the
16 plaintiff's cause of action; (6) the differences in the costs of litigation in the two forums; (7) the
17 availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the
18 ease of access to sources of proof; (9) the presence of a forum selection clause; (10) the relevant
19 public policy of the forum state, if any; (11) convenience of the parties; (12) convenience of the
20 witnesses; (13) local interest in the controversy; (14) court congestion of the two forums; and (15)
21 feasibility of consolidating other claims. See Jones, 211 F.3d at 498-99 (9th Cir. 2000); Hawkins
22 v. Gerber Prods. Co., 924 F.Supp.2d 1208, 1213 (S.D. Cal. 2013); Barnes & Noble, Inc. v. LSI
23 Corp., 823 F.Supp.2d 980, 994 (N.D. Cal. 2011); Metz v. United States Life Ins. Co., 674
24 F.Supp.2d 1141, 1145-46 (C.D. Cal. 2009). To transfer a case under § 1404(a), the "defendant
25 must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of
26 forum." Decker, 805 F.2d at 843; see BAE Sys., 884 F.3d at 472; see also Jones, 211 F.3d at 497.

27      If a mandatory forum selection clause is at issue, the calculus changes significantly. See
28 Atlantic Marine, 571 U.S. at 62-65; Weber, 811 F.3d at 767. The plaintiff's choice of forum is

4

afforded no weight, and the plaintiff bears the burden of showing that the case should not be transferred. See Atlantic Marine, 571 U.S. at 63-64; Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1087 (9th Cir. 2018). Further, the court will not weigh the private interest factors, but will instead deem them to weigh in favor of the forum identified in the forum selection clause. See Atlantic Marine, 571 U.S. at 64; Sun, 901 F.3d at 1087-88. The public interest factors include: (1) court congestion; (2) local interest in having localized controversies decided at home; and (3) having the trial of a diversity case in a forum that is at home with the controlling law. Atlantic Marine, 571 U.S. at 62 n.6; Sun, 901 F.3d at 1088. As a result, "only under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum selection clause. Atlantic Marine, 571 U.S. at 62; Sun, 901 F.3d at 1088. Such "extraordinary circumstances" may include: (1) invalidity of the clause due to overreaching or fraud; (2) enforcement of the clause would contravene a strong public policy of the forum in which suit is brought; or (3) trial in the designated forum would be so gravely inconvenient and difficult that enforcement would deprive a party of his day in court. Sun, 901 F.3d at 1088.

*Discussion*

1. Mandatory or Permissive Clause

The key language of the forum selection clause is that disagreements "*may be resolved* in the United States District Court where the Tribe's Gaming Facility is located . . . ." 2000 Tribal-Gaming Compact at ¶ 9.1(d) (emphasis added). This language does not use the term "shall," which is recognized as a mandatory term. See Hunt Wesson, 817 F.2d at 77. Instead, it uses the term "may," "which is universally recognized as connoting permissiveness. It is not a word of exclusion[.]" SBKC Corp. v. 1111 Prospect Partners, LP, 105 F.3d 578, 581-82 (10th Cir. 1997). Since disputes "may" be brought in the SDCA, the clause does not confine venue to the SDCA. See id.; cf. Idaho, 794 F.3d at 1045 (defining a mandatory clause). Instead, the clause merely permits parties to bring suit in the CDCA and represents an acceptance of the CDCA's ability to exercise personal jurisdiction over the parties. Therefore, because the forum selection clause does not set the CDCA as the exclusive venue, the forum selection clause in this case is permissive, see Idaho, 794 F.3d at 1045; SBKC Corp., 105 F.3d at 581-82, and the *Atlantic Marine* methodology

5

1 does not apply.  See Lakeside Surfaces, 16 F.4th at 216; D&S Consulting, 961 F.3d at 1213; BAE
2 Sys., 884 F.3d at 471-72; Weber, 811 F.3d at 766-67.

3     2.    28 U.S.C. § 1404(a)[2]

4 As indicated above, there are numerous factors that the Court considers in determining
5 whether to transfer under § 1404(a).  The Court will examine the factors separately.

6     a.    Factors

7         (1)    Location Where Documents Executed

8 Neither party addresses this factor.  While it may be likely that California signed the 2000
9 Tribal Gaming Compact in Sacramento, which is in the EDCA, and that the Tribe signed the
10 document at or near its casino, which is in the CDCA, the Court does not know for sure.
11 Therefore, this is a neutral consideration.

12         (2)    Location Most Familiar With the Governing Law

13 The governing law in this matter is IGRA.  As a federal statute, both the EDCA and the
14 CDCA are equally familiar with and capable of applying IGRA.  It is true that the undersigned has
15 been dealing with a number of related IGRA cases, including this one.  However, the undersigned
16 will be taking inactive status at the end of April 2023.  Any additional experience that may
17 arguably inure to the EDCA through the undersigned will not endure.  Further, both sides agree
18 that the Ninth Circuit's decision in *Chicken Ranch Chicken Ranch Rancheria of Me-Wuk Indians*
19 *v.California*, 42 F.4th 1024 (9th Cir. 2022)[3] will provide controlling law for many, if not all, of the
20 issues raised.  As a Ninth Circuit opinion, *Chicken Ranch* must be followed equally by all district
21 courts within the Ninth Circuit, including both the EDCA and the CDCA.  Both districts are
22 equally capable of reading and following *Chicken Ranch*.  Therefore, this factor is neutral.

23         (3)    Plaintiff's Choice of Forum

24 Generally, a plaintiff's choice of forum is given substantial weight.  See Lou v. Belzberg,
25 834 F.2d 730, 739 (9th Cir. 1987); Park v. Dole Fresh Vegetables, Inc., 964 F.Supp.2d 1088, 1094
26 (N.D. Cal. 2013).  However, other considerations will lessen the weight to be given a plaintiff's

---

[2] No party disputes that this case may have been properly brought in the CDCA.

[3] The Ninth Circuit issued its opinion in *Chicken Ranch* after briefing on this motion was completed.

choice of forum.  See Park, 964 F.Supp.2d at 1094.  A plaintiff's choice of forum will be given less weight if the plaintiff does not reside in the forum, or if the conduct giving rise to the plaintiff's claims occurred in another forum.  See Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010); Park, 964 F.Supp.2d at 1094; Williams v. Bowman, 157 F.Supp.2d 1103, 1107 (N.D. Cal. 2001).

Here, there is no dispute that neither the Tribe nor its casino are located in the EDCA.  Therefore, while this factor weighs against transfer, it does so in a reduced capacity.

### (4) Parties' Contacts With the Forum

As just discussed, the Tribe has no apparent contact with the EDCA.  However, the State's capital and Governor Newsom are located in Sacramento.  Given California's contact with the EDCA, this factor weighs against a transfer.

### (5) The Forum's Contacts With the Cause of Action

The parties have not addressed this factor.  Therefore, it is a neutral consideration.

### (6) The Differences In the Cost of Litigation Between Forums

The parties have not addressed this factor.  Therefore, it is a neutral consideration.

### (7) Availability of Compulsory Process

The parties agree that, as an IGRA good faith negotiation case, this matter will be decided through a review of the record of negotiation, see Rincon Band of Luiseno Mission Indians of the Rincon Reservation v. Schwarzenegger, 602 F.3d 1019, 1041 (9th Cir. 2010), and likely through cross-motions for summary judgment.  At this time, no need for any witness testimony is envisioned.  Therefore, this is a neutral consideration.

### (8) Ease Of Access To Sources Of Proof

Again, this matter will be decided on the record of negotiation.  To the Court's knowledge, both sides have the entire record of negotiation and that record can be submitted with identical ease in either the CDCA or the EDCA.  Therefore, this is a neutral consideration.

### (9) The Presence Of a Forum Selection Clause

As discussed above, there is a permissive forum selection clause that permits the parties to bring in the CDCA the exact type of claim being made by the Tribe.  The Ninth Circuit has

indicated that the presence of a forum selection clause is a particularly significant factor. See Jones, 211 F.3d at 499. However, *Jones*'s statement relied on *Stewart*, 487 U.S. at 29, see Jones, 211 F.3d at 499, and pre-dates *Atlantic Marine*. The Court reads *Atlantic Marine* as explaining the significance of a forum selection clause. That is, if the forum selection clause is mandatory, then in the absence of extraordinary circumstances it will control. See Atlantic Marine, 571 U.S. at 62-64. Because the forum selection clause in this case is not mandatory, it represents the agreement of the parties that the CDCA is one place where suit may be filed and that personal jurisdiction will exist. In light of *Atlantic Marine*, and considering the effect of a permissive forum selection clause, the Court detects no reason to give additional weight to the existence of the permissive forum selection clause. Therefore, because the forum selection clause identifies the CDCA as an appropriate forum to resolve the parties' disputes, the Court finds that this factor weighs in favor of a transfer to the CDCA.

### (10)    Public Policy of Forum State

The parties have not addressed this factor. However, both the EDCA and the CDCA are in California. Thus, any public policy of California that might be at issue will be equally served in the EDCA and the CDCA. This factor is neutral.

### (11)    Convenience of the Parties

The parties agree that this is a neutral consideration because of the way in which IGRA good faith negotiation cases are litigated. See Rincon Band, 607 F.3d at 1041. Therefore, this is a neutral consideration.

### (12)    Convenience of the Witnesses

The parties agree that this is a neutral consideration because of the way in which IGRA good faith negotiation cases are litigated. See Rincon Band, 607 F.3d at 1041. Therefore, this is a neutral consideration.

### (13)    Local Interest In the Controversy

The Court detects no local interest that the EDCA has in the controversy between the Tribe and California. However, because the casino is located in the CDCA, the activities of the Tribe's casino in the CDCA is ultimately at issue through the negotiations for a new Tribal-State Gaming

Compact. Therefore, the Court finds that the CDCA has a substantial local interest in this case. This factor weighs significantly in favor of a transfer to the CDCA.

### (14)  Congestion Of the Two Forums

The most recent governmental statistics show that, as of December 31, 2022, the CDCA had 10,355 civil cases and 3,492 criminal cases pending, while the EDCA had 5,820 civil cases and 2,701 criminal cases pending.[4] However, the CDCA has 34 active and senior judges,[5] while the EDCA has a total of 10 active and senior judges.[6] Considering the significantly smaller number of district court judges in the EDCA, the EDCA is substantially more congested than the CDCA. Therefore, this factor weighs significantly in favor of a transfer to the CDCA.

### (15)  Feasibility of Consolidating Other Claims

The parties do not address this issue. Therefore, it is a neutral consideration.

#### b.  Conclusion

As discussed above, ten factors (1, 2, 5, 6, 7, 8, 10, 11, 12, and 15) are neutral. Factors 3 and 4 weigh against a transfer. However, factor 3 weighs against transfer in a reduced capacity since the Tribe has not demonstrated that it has a meaningful connection to the EDCA. Factors 9, 13, and 14 weigh in favor of a transfer to the CDCA. However, factors 13 and 14 weigh in favor of a transfer in an enhanced capacity. Ultimately, the connection that the EDCA has to this case and the parties does not appear substantial. On the other hand, the connection the CDCA has is significant. There is an obvious local concern in the CDCA given the casino's location, and the parties themselves have indicated through a permissive forum selection clause that they are amenable to litigation in that district. While 3 factors to 2 factors weighing in favor of a transfer is not a numerically overwhelming majority, the reduced weight of factor 3 and the enhanced weight of factors 13 and 14 tip the scales markedly in favor of a transfer. Therefore, transfer of this case to the CDCA pursuant to 28 U.S.C. § 1404(a) is appropriate.

---

[4] The pending civil cases can be found at:  https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2022/03/31. The pending criminal cases can be found at: https://www.uscourts.gov/statistics/table/d/statistical-tables-federal-judiciary/2022/12/31.

[5] A list of judges can of the CDCA can be found at: https://www.cacd.uscourts.gov/judges-schedules-procedures.

[6] The active judges of the EDCA can be found at:  https://www.caed.uscourts.gov/caednew/index.cfm/judges/.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to transfer venue (Doc. No. 13) is GRANTED;
2. The Clerk shall transfer this case to the Central District of California – Eastern/Riverside Division; and
3. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   April 6, 2023

SENIOR DISTRICT JUDGE